KATZ v. COMMISSIONER OF IMMIGRATION AT PORT OF SAN FRANCISCO, CAL.

(Circuit Court of Appeals, Ninth Circuit. October 1, 1917.)

No. 2812.

1. ALIENS ⬥51—DEPORTATION—GROUNDS.
   Under Act Feb. 20, 1907, c. 1134, §§ 2, 3, 34 Stat. 898, 899, as amended by Act March 26, 1910, c. 128, §§ 1, 2, 36 Stat. 264 (Comp. St. 1916, §§ 4244, 4247), relating to the exclusion of aliens, and declaring that prostitutes and women and girls coming to the United States for the purpose of prostitution, or any other immoral purpose, and persons who are supported by or receive, in whole or in part, the proceeds of prostitution, shall not be admitted, and that any alien, having entered the United States, who shall receive, share in, or derive benefit from the earnings of any prostitute shall be deported, an alien who, after entrance into the United States, leases premises for use by prostitutes, is not, in view of the scope of the statute, to be deported; the provisions for deportation, under the principle of ejusdem generis, being directed at those persons, male or female, who directly live upon the earnings of prostitutes.

2. DISORDERLY HOUSE ⬥2—SUPPRESSION—NATURE OF POWER.
   The power to regulate and suppress brothels is police in its character, and is one to be exercised by the states, rather than by the federal government.

3. ALIENS ⬥54—DEPORTATION—EVIDENCE.
   In a proceeding for the deportation of an alien, evidence *held* insufficient to show that he was receiving the earnings of a prostitute.

4. DISORDERLY HOUSE ⬥17—OWNERSHIP—PROOF.
   In a proceeding for the deportation of an alien on the ground that he was sharing in the earnings of prostitutes, proof of his ownership of a disorderly house cannot be made by proof of general reputation.

5. HABEAS CORPUS ⬥92(1)—DEPORTATION—FINDINGS BY COMMISSIONER—SCOPE OF REVIEW.
   While the weight of the evidence supporting a finding of fact by the commissioner of immigration cannot be reviewed, the courts may determine on habeas corpus whether there was any evidence to support the commissioner's finding; that being a question of law.

Appeal from the District Court of the United States for the First Division of the Northern District of California; Maurice T. Dooling, Judge.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Petition by Joseph B. Katz for writ of habeas corpus against the Commissioner of Immigration at the Port of San Francisco, Cal. From a judgment denying the writ, petitioner appeals. Reversed.

Marshall B. Woodworth, of San Francisco, Cal., and S. Luke Howe, of Sacramento, Cal., for appellant.

John W. Preston, U. S. Atty., and Caspar A. Ornbaun, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. The appellant, an alien, who has been a resident in this country since 1906, was adjudged and ordered to be deported by the commissioner of immigration of San Francisco, on the charge of being "unlawfully within the United States, in that he has been found receiving, sharing in, or deriving benefit from the earnings of a prostitute or prostitutes." Subsequently appellant applied to the District Court for a writ of habeas corpus, the petition setting forth, by way of an exhibit attached thereto, all of the proceedings had before the commissioner of immigration. A demurrer was interposed to the petition, which, after presentation and argument, was sustained; the court holding that, as it appeared that the appellant was the owner of a house in which prostitution was practiced and carried on, and had received rent thereon from an inmate thereof, one Nellie White, it should be held that he was "deriving benefit from the earnings of a prostitute."

Error is assigned by appellant on account of this holding. It is further urged on the part of the government that the petition otherwise shows on its face that the appellant is guilty of receiving the earnings of prostitutes.

[1, 2] We must seek for the purpose and object of the statute, in order that we may properly construe the provision which it is claimed appellant has violated. Section 2 of the act in question, being that of February 20, 1907, as amended by Act March 26, 1910 (36 Stat. 263, 264), relates to the exclusion of certain classes of aliens. These are specified as idiots, imbeciles, feeble-minded persons, etc., and among the rest "prostitutes, or women or girls coming into the United States for the purpose of prostitution or for any other immoral purpose," and "persons who are supported by or receive in whole or in part the proceeds of prostitution." The language relating to this class of persons is of the same import as that contained in section 3, under which the charge against appellant is preferred. That of the latter section is no broader, and manifestly it was not intended to extend to any persons other than the language of section 2 was designed to reach. The manifest purpose of Congress was to exclude aliens of that particular class, as well as those answering to the other classes enumerated. Section 3 was designed to reach aliens, although admitted into this country, who should thereafter be found guilty of the acts proscribed. But the classification as it respects persons receiving the earnings of prostitutes is the same in both sections. It is very clear what persons are meant to be included by the classification:

"An inmate of or connected with the management of a house of prostitution, or practicing prostitution."

Over against this, but in the same connection, is included any alien who shall receive, share in, or derive benefit from the earnings of any prostitute. This alludes to another class, but allied in association to the prostitute class. It is perfectly well known what this class is. There are many vile persons of the male sex, who allow themselves to be "supported by" (using the language of section 2), and take the earnings of, fallen women, which they appropriate to their own particular use, and many of them have no other visible means of livelihood. This is not to say that women may not be guilty of living off the earnings of fallen women as well, nor that a man may not be guilty of keeping a brothel; but the two classes are clearly defined, so that there need be little uncertainty as to the style or character of persons Congress designed to comprise by such classification. It is quite unreasonable to suppose that the dry goods salesman or the grocer, who sells his goods to a fallen woman and takes the price from her, or a cabman, who carries her for hire and receives the hire from her, or, as in the present case, the landlord, who rents her abode to her and takes rental therefor, all or any of them were designed to be classified as persons who receive or derive benefit from the earnings of a prostitute, and such, we are impressed, is not the intendment of the statute.

The power to regulate and suppress brothels and bawdyhouses, which includes the regulation of leasing houses or buildings for such purposes, is police in character, and in general is exercised by the states and local municipalities, rather than by the general government; and the statute in question manifests no intendment to encroach upon or interfere with such regulations. It deals, as we have seen, with certain alien classes, and provides for the deportation of aliens comprised thereby, and, considering the spirit and purpose of the statute, we think that there is no intendment to include an alien landlord, who leases to a prostitute the house in which she lives or practices prostitution and receives from her the rental thereof. The spirit of the law is vital, for interpretation, where the letter leads to incongruities or absurdities. Holy Trinity Church v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226. This construction is as well within the doctrine of ejusdem generis, which we think is applicable here. 36 Cyc. 1119.

[3, 4] We now turn to the contention of the government that the petition of the appellant otherwise shows on its face that he was guilty of receiving the earnings of prostitutes. It will be kept in mind what the charge in the warrant is, and it is with reference to this charge, and to none other, that the inquiry must be conducted.

Numerous affidavits are set forth by the petition, by way of an exhibit thereto. We will make reference to such affidavits. Robert A. Peers, after setting forth certain matters respecting Harry Katz, avers that since the time alluded to "the two brothers, Harry Katz and Joseph Katz, have conducted a house of prostitution on the property [describing it], and it is a well-known fact in Colfax that the Katz brothers were interested in the management of this house of prostitution, over which Nellie White, a notorious prostitute, presided as

madam," and that he has frequently heard the property described as the Katz house and the like. Lucy F. Peers deposes that "it was generally know that the Katz brothers were associated with the house." Jeannie K. Lobner deposes to the same effect, using practically the same language. Minnie G. Williams deposes as follows:

"The affiant further avers that it is understood, and, ever since the said H. H. Katz established said house of prostitution at the north entrance of town, it has generally been accepted as a fact by the people of Colfax, that the Katz brothers, H. H. Katz and Joseph Katz, conducted said house of prostitution at the north entrance to town, managing and directing the same, and that no one was ever heard to deny that they conducted and managed the said house of prostitution, until they, the Katz brothers, were arrested in 1914."

This affiant interposed another affidavit, which is in the nature of a reply to the argument of counsel for the appellant before the commissioner of immigration, and contains nothing additional. A number of citizens have also interposed a protest against efforts made to prevent the deportation of Harry and Joseph Katz; but it contains no averments purporting to set forth substantive evidence, unless it is wherein they say that:

"It has been a matter of common knowledge that they were profiting by the earnings of prostitutes."

These affidavits and protests contain the strongest showing made against Joseph Katz respecting his alleged receiving of the earnings of a prostitute or prostitutes. The very best that can be made out of the testimony, and the whole thereof contained in the record, is that it is wholly hearsay and based upon common repute in the vicinity; the affiants generally asseverating upon information and belief. There is practically no substantive testimony of fact. Locally—that is, in the state of California—the fact that a house is being conducted as a house of ill fame may be shown by common repute; but there is no rule of which we are aware by which the ownership or management of such a house may be so proven. Of course, if it were shown that Joseph Katz was conducting or managing such a house, it would be a reasonable inference and deduction that he was taking the earnings of the inmates. There is not a syllable of testimony that he accepted such earnings, except that he was the owner of the house and accepted rentals from the occupant, which in itself, as we have seen, is not sufficient to condemn him under the charge. Some substantive evidence of the fact of managing and conducting such a house, besides mere hearsay and expression of opinion and belief (which is practically the equivalent of no competent evidence of the fact sought to be proven), is necessary upon which to base the inference of his having taken the earnings of the inmates.

[5] We are aware of the holding of the Supreme Court that the question is for the commissioner of immigration, and the court is not permitted to look behind his finding, when it is a matter of weighing the evidence; but where there is substantially no evidence competent to establish the charge preferred, it then becomes a question of law for the court. The principle involved has been substantially determined by the case of Backus v. Owe Sam Goon, 235 Fed. 847, 149 C. C. A.

159. In this view, the petition of appellant states a good cause for the writ.

The judgment of the District Court will therefore be reversed, and the cause remanded for such other proceedings as are not inconsistent with this opinion.